UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

HEATHER HUSSION,

   Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.

17-CV-1006
DECISION AND ORDER

---

On October 6, 2017, the plaintiff, Heather Hussion, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On March 22, 2019, Hussion moved for judgment on the pleadings, Docket Item 13, and on May 21, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 16. On June 11, 2019, Hussion replied. Docket Item 17.

For the reasons stated below, this Court grants Hussion's motion and denies the Commissioner's cross-motion.

## BACKGROUND

### I. PROCEDURAL HISTORY

On November 26, 2013, Hussion applied for Supplemental Security Income benefits. Docket Item 7 at 67. She claimed that she had been disabled since November 26, 2012, due to an impairment involving her left hip, avascular necrosis, and high blood pressure. *Id.*

On February 7, 2014, Hussion received notice that her application was denied because she was not disabled under the Act. *Id.* at 78-86. She requested a hearing before an administrative law judge ("ALJ"), *id.* at 87, which was held on April 14, 2016, *id.* at 37. The ALJ then issued a decision on May 9, 2016, confirming the finding that Hussion was not disabled. *Id.* at 32. Hussion appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 4-6.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Hussion's objection. Hussion was examined by several different providers, but only four—Peter Shields, M.D., an orthopedic surgeon; D. Dudziak, a physician assistant who was supervised by Dr. Shields; Christopher E. Beney, M.D., Hussion's primary care physician; and Samuel Balderman, M.D., a consulting thoracic surgeon—are most significant to this Court's review of Hussion's claims.

### A. Peter Shields, M.D., Orthopedic Surgeon, and D. Dudziak, Physician Assistant ("PA")

Peter Shields, M.D., is Hussion's treating orthopedic surgeon. Dr. Shields replaced Hussion's left hip on December 10, 2012, Docket Item 7 at 261-62, and her right hip on January 14, 2014, *id.* at 282-83. Hussion then saw Dr. Shields or his staff under Dr. Shield's supervision regularly during her alleged period of disability—at least until June 22, 2015. *See, e.g.*, *id.* at 244-46, 255, 424-26 (Nov. 13, 2013); 247-49, 256-57, 421-23 (July 5, 2013); 264-66 (Sept. 6, 2012); 277-79 (Jan. 29, 2014); 400-02 (Feb. 25, 2014); 403-06 (March 3, 2015); 408 (March 30, 2015); 409-10 (June 22, 2015).

2

On November 13, 2013, Dr. Shields opined in treatment notes that Hussion was "disabled." *Id.* at 245. Two-and-a-half years later, on March 23, 2016, Dr. Shields and PA Dudziak provided more specific medical opinions about Hussion's physical limitations as part of a "physical residual functional capacity questionnaire." *Id.* at 434-38. They diagnosed Hussion with bilateral chronic hip pain and found that her prognosis was "poor." *Id.* at 434. They indicated that Hussion's bilateral hip pain limits her walking, sitting, and standing. *Id.* They noted that Hussion has had "no relief" after treatment "with multiple NSAIDS [and] muscle relaxers." *Id.* And they opined that Hussion's "impairments lasted or can . . . be expected to last at least twelve months." *Id.*

Dr. Shields and PA Dudziak also opined that Hussion's "experience of pain or other symptoms" was constant and "severe enough to interfere with attention and concentration needed to perform even simple work tasks." *Id.* at 435. But they also opined that Hussion was "[c]apable of low stress jobs." *Id.*

Dr. Shields and PA Dudziak found that Hussion could not walk the length of a city block "without rest or severe pain." *Id.* They found that she could sit for only thirty minutes before needing to get up and that she could stand for only five minutes before "needing to sit down" or "walk around." *Id.* They also found that Hussion could sit for no more than two hours and stand for no more than two hours in an eight-hour workday. *Id.* at 436.

Dr. Shields and PA Dudziak also noted that Hussion needs "periods of walking around during an 8-hour working day." *Id.* Breaks for a walk must occur at least every twenty minutes and must last at least three minutes each. *Id.* And Hussion can work

3

only in "a job that permits shifting positions *at will* from sitting, standing or walking." *Id.* (emphasis in original). Moreover, Hussion requires unscheduled breaks during an eight-hour workday, and those breaks must occur hourly and must last for about five to ten minutes on average. *Id.*

Dr. Shields and PA Dudziak stressed that Hussion "CAN NOT do prolonged sitting." *Id.* (emphasis in original). They noted that Hussion could only rarely carry less than ten pounds and could never carry twenty or more pounds. *Id.* She could rarely climb stairs and could never twist, stoop, crouch, squat, or climb ladders. *Id.* at 437. But Hussion had no "significant limitations with reaching, handling or fingering." *Id.*

Based on their experience with Hussion over the years, Dr. Shields and PA Dudziak noted that her "impairments are likely to produce 'good days' and 'bad days.'" *Id.*

### B. Christopher E. Beney, M.D., Primary Care Physician

Dr. Beney is referred to as Hussion's primary medical doctor—from at least 2012 until 2014—throughout other doctors' treatment notes in the record. *See e.g.*, Docket Item 7 at 246 (Dr. Shields's 11/13/13 treatment notes copied to Dr. Beney); 248 (Dr. Shield's 7/5/13 treatment notes copied to Dr. Beney); 254 (Dr. Beney is referring physician to Dr. Shields for 11/13/13 visit); 257 (Dr. Beney is referring physician to Dr. Shields for 7/5/13 visit); 259 (Dr. Beney is referring physician to Dr. Shields for 3/6/2013 visit); 261 (Dr. Beney copied on notes from Hussion's 12/10/2012 surgery); 263-65 (Dr. Beney identified as "primary doctor" in September 2012 and copied on treatment notes); 282 (Dr. Beney copied on notes from Hussion's 1/13/14 surgery) 301 (Dr. Beney mentioned in 3/19/2014 progress notes). Yet there is only one piece of evidence in the

4

record from Dr. Beney: treatment notes from one visit—August 19, 2013—when Hussion complained of pain in her hips and legs. Docket Item 7 at 237-40.

### C. Samuel Balderman, M.D., Consulting Thoracic Surgeon

Dr. Balderman, a thoracic surgeon, saw Hussion only once: on January 2, 2014. Docket Item 7 at 267-70. Dr. Balderman noted that Hussion "appeared to be in no acute distress" during the examination. *Id.* at 268. Hussion demonstrated an ability to walk on her "heels and toes without difficulty." *Id.* Her "[s]quat was 30% of full," and she had a "normal" stance. *Id.* Dr. Balderman opined that Hussion needed to use a cane only for "heavy terrain." *Id.* She "[n]eeded no help changing for exam or getting on and off [the] exam table" and was "[a]ble to rise from [a] chair without difficulty." *Id.*

Dr. Balderman diagnosed Hussion with "[s]tatus post repair of left ankle fracture," hypertension, "[s]tatus post left total hip replacement," and "[d]egenerative disease right hip." *Id.* at 269. He opined that she had a "[m]arked limitation kneeling, climbing, and prolonged walking due to right hip pain." *Id.* But he noted that his opinion was limited to the period of time when he examined Hussion, and he recommended that Hussion "be reevaluated six months following [her] scheduled right total hip replacement." *Id.*

## III. THE ALJ'S DECISION

In denying Hussion's application, the ALJ evaluated Hussion's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

5

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative

substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Hussion had not engaged in "substantial gainful activity" since November 26, 2013, the application date. Docket Item 7 at 24. At step two, the ALJ found that Hussion had the following severe impairments: "bilateral hip avascular necrosis status post-bilateral hip replacement" and obesity. *Id.* At step three, the ALJ determined that Hussion did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 25.

In assessing Hussion's RFC, the ALJ determined that Hussion could perform sedentary work as that term is defined in 20 C.F.R. § 416.967(a),[1] but with the following limitations:

> the claimant could perform no prolonged walking for more than 10 minutes. The claimant could stand for no more than 15 minutes, and then must change position to sitting while remaining on-task. The claimant could sit for no more than 30 minutes, and then must change position to standing while remaining on task. The claimant could occasionally climb ramps and stairs and never climb ladders, ropes, and scaffolds. The claimant could occasionally balance and stoop, and never kneel, crouch, or crawl.

*Id.* at 25-26. In formulating Hussion's RFC, the ALJ "afford[ed Dr. Shields's] opinions partial weight." *Id.* at 29-30. She also assigned Dr. Balderman's opinion "partial weight." *Id.* at 30.

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

7

At step four, the ALJ determined that Hussion is unable to perform past relevant work as a bartender or machine operator. *Id.* at 27. But at step five, the ALJ determined that the Commissioner sustained her burden of establishing that Hussion had the RFC to perform "jobs that exist in significant numbers in the national economy." *Id.* at 31. Specifically, the ALJ credited the vocational expert's testimony that Hussion could perform jobs such as a press operator, polisher, or surveillance system monitor. *Id.* at 31-32.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Social Security Administration ("SSA")] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her

8

disability determination made according to correct legal principles." *Johnson*, 817 F.2d a 986.

## **DISCUSSION**

Hussion argues that "[r]emand is required because there was no medical basis to the ALJ's RFC finding." Docket Item 13-1 at 9. Among other arguments, Hussion claims that the ALJ improperly rejected the opinions of Dr. Shields and PA Dudziak. *Id.* at 12-13. This Court agrees.

### **I. TREATING PHYSICIAN RULE AND DR. SHIELDS'S OPINIONS**

"Social Security Administration regulations, as well as [Second Circuit] precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 2019 WL 2273574, at *2 (2d Cir. 2019). "First, the ALJ must decide whether the opinion is entitled to controlling weight." *Id.* "The opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). "Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Id.* "In doing so, it must 'explicitly consider' the following, nonexclusive '*Burgess* factors': '(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the

9

physician is a specialist.'" *Id.* (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). "At both steps, the ALJ must 'give good reasons in its notice of determination or decision of the weight it gives the treating source's medical opinion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

"An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight . . . is a procedural error." *Id.* at *3. "If 'the Commissioner has not otherwise provided good reasons for its weight assignment,' [courts] are unable to conclude that the error was harmless and consequently remand for the ALJ to 'comprehensively set forth its reasons.'" *Id.* (quoting *Halloran*, 362 F.3d at 33).

Here, the ALJ addressed Dr. Shields's opinions in the following manner:

> I afford these opinions partial weight, as the limitations to sitting, standing, and walking are reflected in the objective medical record, and are consistent with the record taken as a whole. However, the limitations due to concentration problems due to pain, as well as absenteeism, are not consistent with the longitudinal medical record, as the objective treatment notes do not describe signs of these limitations. The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. Further, this opinion was rendered before the claimant was referred to a pain clinic or began pain management. Therefore, these opinions receive partial weight.

Docket Item 7 at 29-30.

The ALJ "fail[ed] to 'explicitly' apply the *Burgess* factors when assigning weight" to Dr. Shields's opinions. *Estrella*, 2019 WL 2273374, at *3. She failed to consider "the first *Burgess* factor—'the frequency, length, nature, and extent of [Dr. Shields's] treatment'—before weighing the value of the opinion." *See id.* (quoting *Selian*, 708 F.3d at 418). Nowhere in the ALJ's decision, for example, is the fact that Dr. Shields and the medical staff he supervised regularly saw Hussion for several years. Nor did the ALJ

10

address the fourth *Burgess* factor—whether the physician is a specialist. In fact, there is nothing in the ALJ's decision to suggest that she considered Dr. Shields's specialty as an orthopedic surgeon when considering his opinion on Hussion's subjective complaints about her orthopedic problems and pain.

What is more, "a searching review of the record" fails to "assure" this Court "that the substance of the treating physician rule was not traversed." *Id.* (quoting *Halloran*, 362 F.3d at 32). For example, the ALJ's failure to address the first *Burgess* factor is especially relevant here because of the subjective nature of the pain symptoms that Hussion claims to experience and the ALJ's rejection of her subjective complaints. Based on their experience with Hussion over the years, Dr. Shields and PA Dudziak noted that her "impairments [are] likely to produce 'good days' and 'bad days.'" Docket Item 7 at 437. So considering the frequency and the length of Dr. Shields's and PA Dudziak's treatment of Hussion might shed light on their evaluation of her pain over time.

The same is true about the nature of the relationship between Dr. Shields and Hussion. Dr. Shields is the surgeon who replaced both of her hips, and he therefore is in an unparalleled position to opine about Hussion's subjective complaints of pain. Finally, with respect to the fourth *Burgess* factor, the fact that Dr. Shields is an orthopedic surgeon—a specialist in the very area at issue—means that he can shed light on whether Hussion's subjective complaints of pain are generally consistent with disorders of the hip both before and after surgery.[2]

---

[2] And he is certainly in a better position to shed light on those subjective complaints of pain than Dr. Balderman who saw Hussion only once (before her second hip replacement) and who, as a thoracic surgeon, is a specialist in another area entirely.

11

Accordingly, Hussion's claim for disability benefits is remanded for reconsideration consistent with the procedural mandates of the SSA and Second Circuit precedent.

## II. DUTY TO DEVELOP THE RECORD AND DR. BENEY'S OPINIONS AS TO HUSSION'S LIMITATIONS

Even if the treating physician rule had not been traversed, there would be another reason to remand. The ALJ did not observe her duty to develop the record, which, in this case, required her to contact Dr. Beney to obtain his medical records relating to Hussion's impairments.

The Act provides that:

> In making any determination [with respect to whether an individual is under a disability] the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis.

42 U.S.C. § 423(d)(5)(B). "Even when a claimant is represented by counsel, it is the well-established rule in our circuit 'that the social security ALJ, unlike a judge at trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.'" *Morgan v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)).

Here, the repeated references to Dr. Beney as Hussion's primary care doctor in other medical records suggests a close provider-patient relationship. But the record includes treatment notes from only one visit between Hussion and Dr. Beney. For that reason, there appears to be a "clear gap[] in the administrative record" that the ALJ had

12

a duty to fill by contacting Dr. Beney to find out what medical evidence from his office might be missing from the record.[3] *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). And based on that evidence, the ALJ then may well have had a duty to inquire as to Dr. Beney's opinions regarding the nature, extent, and severity of Hussion's physical impairments in light of his understanding of her conditions. *Id.*; *see Echevarria v. Sec. of Health and Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982); *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980).

---

[3] If there were no such records, or if such records and opinions were unobtainable for some reason, the ALJ should have described the efforts the agency took to obtain them. *Richards v. Berryhill*, 2018 WL 6831153, at *6 (W.D.N.Y. Dec. 28, 2018); *see also Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 268 (S.D.N.Y. 2016) ("The absence of any treatment records from [a treating psychiatrist], with no documented attempts by the ALJ to obtain them, is such a clear violation of the ALJ's duty to develop the record that it is not unheard of in such cases for the Commissioner to affirmatively move to remand the case on that basis.").

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 16, is DENIED, and Hussion's motion for judgment on the pleadings, Docket Item 13, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.[4]

SO ORDERED.

Dated:　　June 19, 2019
　　　　　　Buffalo, New York

　　　　　　　　　　　　　　　　　　　　　_s/ Lawrence J. Vilardo_
　　　　　　　　　　　　　　　　　　　　　LAWRENCE J. VILARDO
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[4] Hussion also argued that the ALJ improperly based her RFC assessment on bare medical findings and that Dr. Balderman's opinions could not have been relied on because they were "stale." Docket Item 13-1 at 9-12. This Court "will not reach the[se] remaining issues . . . because they may be affected by the ALJ's treatment of this case on remand." _Watkins v. Barnhart_, 350 F.3d 1297, 1299 (10th Cir. 2003).